UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------x
                                          :
UNITED STATES OF AMERICA                  :
                                          :
        v.                                :       UNDER SEAL
                                          :       Case No. 1:10-CR-325-PLF
EVAN H. SNAPPER,                          :
                                          :
        Defendant.                        :
                                          :
-------------------------------------------------------x
```

**SENTENCING MEMORANDUM OF EVAN H. SNAPPER**

Evan T. Barr (Bar ID: 425971)
Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, NY 10019
(212) 506-3900

*Counsel for Defendant Evan Snapper*

Dated:  March 28, 2011

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cornwell Entm't, Inc. v. Anchin, Block & Anchin,*
    No. 09 Civ. 11780 (GAO) (D. Mass).....................................................................................2, 5

*United States v. Acevedo-Vila,*
    08-cr-00036 (D.P.R. 2008) ...............................................................................................20

*United States v. Boucher,*
    1:06-cr-00062 (D.D.C. 2007)..............................................................................................20

*United States v. Collier,*
    1:07-cr-00182 (D.D.C. 2007)..............................................................................................20

*United States v. Crosby,*
    397 F.3d 103 (2d Cir. 2005).................................................................................................16

*United States v. Cuza,*
    2:05-cr-00344 (C.D. Cal. 2005)...........................................................................................20

*United States v. Feldman,*
    09-cr-75 (E.D. Pa. 2009) and 08-cr-36 (D.P.R. 2008) .........................................................20

*United States v. Gardellini,*
    545 F.3d 1089 (D.C. Cir. 2008)...........................................................................................15

*United States v. LeBlanc,*
    06-cr-091 (D.D.C. 2007)......................................................................................................20

*United States v. Schwartz,*
    1:05-cr-00157 (D.D.C. 2005)...............................................................................................20

*United States v. Spears,*
    1:03-cr-00096 (D.D.C. 2003)...............................................................................................21

*United States v. Stipe,*
    1:03-cr-00128 (D.D.C. 2003)...............................................................................................21

**STATUTES**

18 U.S.C. § 1001 (2006) ........................................................................................................1, 6, 7

18 U.S.C. § 3553(a)(1) (2006) ..............................................................................................16, 17

18 U.S.C. § 3553(a)(2)(B) (2006)...............................................................................................18

18 U.S.C. § 3553(a)(2)(C) (2006)...............................................................................................18

18 U.S.C. § 3553(a)(6) (2006) ...................................................................................................20

U.S. Sentencing Guidelines Manual § 2C1.8(a) (2010) .............................................................15

U.S. Sentencing Guidelines Manual § 3E1.1(a) (2010)..............................................................15

U.S. Sentencing Guidelines Manual § 4A1.3 cmt. background (2010).......................................18

U.S. Sentencing Guidelines Manual § 5K1.1 (2010).................................................................1, 5

U.S. Sentencing Guidelines Manual §§ 2C1.8(b)(1) and 2B1.1(b)(1)(D) (2010) ......................15


**INTERNET**

http://en.wikipedia.org/wiki/Patricia_Cornwell...............................................................................3

TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     THE OFFENSE CONDUCT ........................................................................................2

██  ████████████████████████████████████████████████████████████████

██  ████████████████████████████████████████████████████████████████

    █  ████████████████████████████████████████████████████████████

    █  ████████████████████████████████████████████████████████████

    █  ████████████████████████████████████████████████████████████

    █  ████████████████████████████████████████████████████████████

    █  ████████████████████████████████████████████████████████████

V.      SENTENCING GUIDELINES ISSUES ......................................................................15

        A.      Summary Of Presentence Report Findings...........................................15

        B.      Consideration Of All Of The Factors Listed In 18 U.S.C. § 3553(a)
                Strongly Supports A Non-Guidelines Sentence.....................................15

                1.      History and Characteristics of the Defendant ...........................16

                2.      Nature of the Offense.................................................................17

                3.      Need to Protect the Public..........................................................18

                4.      Need for Deterrence...................................................................18

                5.      Need to Avoid Sentencing Disparities.......................................20

VI.     CONCLUSION..........................................................................................................22

## I.      INTRODUCTION

Evan Snapper respectfully submits this memorandum in connection with his sentencing in the above-captioned case, currently scheduled for April 7, 2011.  Mr. Snapper has pled guilty, ████████████████████████ to a one-count information charging him with making false statements relating to his role in facilitating the reimbursement of approximately $62,000 in conduit campaign contributions, in violation of 18 U.S.C. § 1001 (2006).

Mr. Snapper deeply regrets the lapse of judgment that led him to commit this offense. Mr. Snapper, formerly a principal with a prominent New York accounting firm, is a hard-working, respectable family man who has led a productive and law-abiding life.  Mr. Snapper committed the instant offense as an ill-advised favor to Patricia Cornwell, an important and powerful client of his firm. ████████████████

████████████████████████

████████████████████████

████████████████

Mr. Snapper has paid a steep price for his participation in this offense.  First, as a result of his felony conviction, he has lost his job and career at Anchin, and is unlikely to find comparable employment in the future.  Second, he has lost his good name, and he and his family have suffered pain and embarrassment in their suburban community.  And third, while he has already agreed to pay a substantial monetary penalty of $65,000 to the Federal Election Commission under the terms of a proposed settlement, he still faces parallel civil proceedings in several other forums relating to the contributions in question.

We respectfully submit that, given Mr. Snapper's exemplary background, and all of the circumstances surrounding the offense, this Court should adopt the Government's recommendation and impose a probationary sentence.

## II.    THE OFFENSE CONDUCT

Mr. Snapper was a principal with Anchin, Block & Anchin, a well-established and respected New York-based accounting and business management firm founded in 1923 whose clientele included high wealth individuals and families.

From 2004 through 2009, Anchin assigned Mr. Snapper to manage the account of Patricia Cornwell.  Cornwell, the author of numerous bestselling crime novels, was an important (if at times mercurial) client.[1]  Cornwell granted Mr. Snapper power of attorney so he could provide her with services such as bill payments, accounting advice, business management consultation and tax preparation.  In this capacity, Mr. Snapper had authorized access to Cornwell's individual and company bank accounts.

Cornwell actively contributed to various candidates on the state and federal levels.  As part of his duties, Mr. Snapper on many occasions was asked by Cornwell to make political contributions from Cornwell's accounts.

In 2007, former Virginia Governor James Gilmore announced he would seek the Republican nomination for President and solicited Cornwell to make a campaign contribution. Although Cornwell and Gilmore were personal friends, she was not comfortable publicly

---

[1] In a civil action filed against Anchin and Mr. Snapper (described later in this memorandum at page 6), Cornwell "openly acknowledges her diagnosis with a mood disorder known as bipolar disorder, which although controlled without medication, has contributed to her belief that it is prudent for her to employ others to manage her business affairs and her investments.  Anchin was aware of Ms. Cornwell's disorder." Compl. ¶ 13, *Cornwell Entm't, Inc. v. Anchin, Block & Anchin*, No. 09 Civ. 11780 (GAO) (D. Mass).

disclosing an individual contribution to his campaign due to philosophical differences with his party's stance regarding gay marriage.[2]  Instead, Cornwell asked Mr. Snapper to make a contribution on her behalf.  Mr. Snapper and his wife each made individual contributions of $2,300 to the Jim Gilmore for President Committee.  At Cornwell's direction, Mr. Snapper subsequently reimbursed himself for the contributions, by means of a check written to cash.

In November 2007, after withdrawing from the race for President, Gilmore announced he was running instead for a U.S. Senate seat.  Cornwell declined to contribute directly but again asked Mr. Snapper to do so on her behalf.  Mr. Snapper and his wife contributed a total of $9,200 to the Gilmore for Senate Committee, for the primary and general election cycles.  Mr. Snapper subsequently reimbursed himself for these expenditures from a Cornwell account.

Cornwell also supported then-Senator Hillary Clinton's candidacy in the 2008 presidential election.  In December 2007, Cornwell directed Mr. Snapper to contribute on her behalf (and in her name) a total of $4,600 to the Clinton for President Committee, which was the maximum individual contribution permissible for the primary and general election cycles.

Cornwell later told Mr. Snapper she wanted to play a more significant role in providing financial support for Clinton.  In or about March 2008, after making some inquiries on her behalf, Mr. Snapper informed Cornwell that he had learned that Elton John was planning to perform at a fundraiser concert at Madison Square Garden in New York on April 9, 2008, and that the proceeds from the ticket sales would go to the Clinton campaign.  Cornwell told Mr. Snapper that she wished to contribute as much as possible, and asked him to purchase a block of

---

[2] In 2005, Cornwell married Staci Ann Gruber, an instructor of psychiatry at Harvard, in Massachusetts.  She did not disclose news of her marriage until 2007.  *See* http://en.wikipedia.org/wiki/Patricia_Cornwell.

fifty of the most expensive tickets to the concert, at a cost of $2,300 each, and to donate them back to the Clinton campaign for resale.

Mr. Snapper informed Cornwell that she could not purchase a block of tickets due to campaign restrictions. Cornwell asked Mr. Snapper what else she could do to assist the Clinton campaign. Mr. Snapper explained that she could find other people to buy tickets to the concert. Cornwell then suggested that she would call family members and friends and reimburse them for the tickets that they purchased for the concert. Cornwell hoped to enlist enough contributions (specifically, $50,000 or more) to become a concert "sponsor" which would allow her to sit in the front row, meet the candidate, and have her name placed prominently in the program.

In March 2008, Cornwell recruited nine family members and friends who were willing each to purchase $2,300 tickets for the concert with the understanding that she would reimburse them for the cost of the ticket. Cornwell directed these family members and friends to contact Mr. Snapper who would handle the details of purchasing the tickets and getting reimbursed. In late March 2008, Mr. Snapper purchased two $2,300 tickets to the concert for himself and his wife for a total of $4,600. Additionally, with only days left before the concert, and Cornwell not yet having enlisted enough friends and family to attain "sponsor" status, Mr. Snapper enlisted eleven Anchin employees and some of their spouses to purchase $2,300 tickets for the concert with the understanding that they too would be reimbursed.

Mr. Snapper provided the putative contributors with the requisite financial forms, explained how they should fill them out (using their own names), and forwarded the completed paperwork to the Clinton for President Committee.

In or about April 2008, Mr. Snapper caused disbursements from Cornwell's accounts to be made to himself and the twenty individuals who had made contributions.[3]  Mr. Snapper caused some of the reimbursements to be made in amounts that were not multiples of $2,300; some of the reimbursements to be made in part by check and in part by cash; and some of the reimbursement checks and corresponding entries in Cornwell's account ledgers to reflect that the payments were for purposes other than reimbursements for political contributions.  Mr. Snapper has acknowledged he took those steps on his own initiative to conceal the true purpose of the payments as reimbursements for political contributions, in order to protect his client.



---

[3] Mr. Snapper did not reimburse the contribution made in the name of his wife.





















## V.     SENTENCING GUIDELINES ISSUES

### A.     Summary Of Presentence Report Findings

We agree with the Probation Office's calculation of Mr. Snapper's sentencing guidelines in this case.  Pursuant to U.S. Sentencing Guidelines Manual § 2C1.8(a) (2010), the base offense level is eight.  PSR ¶ 36.  Six levels are added pursuant to §§ 2C1.8(b)(1) and 2B1.1(b)(1)(D).  PSR ¶ 37.  Pursuant to § 3E1.1(a), a two-level reduction for acceptance of responsibility is recommended.  PSR ¶ 43.  Thus, Mr. Snapper's total offense level is twelve.  *Id.* ¶ 44.  Mr. Snapper has no Criminal History points, *id.* ¶¶ 45-47, thus his Guidelines range is between ten to sixteen months' imprisonment, *id.* ¶ 98.

### B.     Consideration Of All Of The Factors Listed In 18 U.S.C. § 3553(a) Strongly Supports A Non-Guidelines Sentence

After evaluating the Sentencing Guidelines and calculating a potentially applicable Guidelines range, a sentencing court must consider the remaining Section 3553(a) factors in order to "'impose a sentence sufficient, but not greater than necessary,'" to comply with the purposes set forth in 18 U.S.C. § 3553(a).  *United States v. Gardellini*, 545 F.3d 1089, 1091-92 & n.1 (D.C. Cir. 2008) (quoting 18 U.S.C. § 3553(a)).  Sentencing courts have the obligation to consider factors that were discouraged under the pre-*Booker* mandatory Guidelines regime, such as the history and characteristics of a defendant, the nature of the offense, the need for

deterrence, the likelihood of recidivism, and the public's need for protection.   Sentencing courts are obligated to evaluate these factors in order to determine the appropriate punishment for a particular defendant, thereby "achieving somewhat more individualized justice."   *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).

        1.    <u>History and Characteristics of the Defendant</u>

Under Section 3553(a), the court must consider "the history and characteristics of the defendant" when imposing a sentence.   18 U.S.C. § 3553(a)(1) (2006).   This factor permits sentencing courts to consider many aspects of the defendant's life when fashioning a fair and just sentence.   Mr. Snapper's life story strongly supports a lenient sentence in this case.

First, Mr. Snapper is a self-made man who rose from humble roots to achieve a significant degree of professional and personal accomplishment.   Mr. Snapper grew up in a blue collar household in Staten Island.   His father drove a cab to support the family.   He had to work his way through college and law school to achieve success.   Nothing has been handed to him in life.

Second, Mr. Snapper has had a distinguished and heretofore unblemished career. Through hard work and perseverance he has established a reputation among clients and colleagues for being dedicated, trustworthy and reliable.   It is clear that, up until the instant offense, he was a leader at his firm and in his field.

Third, notwithstanding his professional success, Mr. Snapper has continually placed a priority on caring for friends, family and neighbors in the myriad ways described herein.   These are qualities which speak to his fundamental integrity as a person.

2.      Nature of the Offense

Section 3553(a)(1) (2006) requires the Court to consider the "nature and circumstances of the offense" in determining an appropriate sentence.  While we do not in any way question the seriousness of the conduct at issue, we submit that the particular circumstances surrounding Mr. Snapper's offense clearly call for leniency.

Mr. Snapper did not seek to personally gain from the offense.  He participated in the scheme solely to placate a demanding and mercurial firm client.  There was no explicit financial reward or *quid pro quo*.  It was Cornwell who had the incentive to commit the offense in order to enhance her stature as a prolific fundraiser.  Mr. Snapper, a registered Republican since he was 18 years old, had no such incentive and did not even support Mrs. Clinton for President.

Unlike many lobbyists and fundraisers who have been prosecuted for comparable campaign violations, Mr. Snapper did not seek to advance his own agenda or curry favor with political figures in making these contributions.  Nor did he attempt to subvert or corrupt the political process by evading restrictions on prohibited sources of campaign funds, such as foreign money.  Indeed, the conduit contributions to Gilmore were simply intended to spare Cornwell from being publicly linked to a Republican candidate with whom she differed on certain policy issues.

### 3.     Need to Protect the Public

In determining an appropriate sentence, the court must weigh the need to "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C) (2006).  We respectfully submit that given his good character, prior unblemished history and compliance with the terms of his pretrial release, Mr. Snapper poses no risk of recidivism.[4]

### 4.     Need for Deterrence

Another factor is the need to "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(B) (2006).  Here, a prison sentence is clearly not needed here to achieve deterrence in light of the substantial penalties and punishments Mr. Snapper already faces.

Mr. Snapper also faces an array of parallel proceedings which carry substantial financial and administrative penalties.  First, he has agreed to enter into a proposed Conciliation Agreement with the FEC which, if approved, will require him to pay $65,000 to settle civil and administrative charges.[5]  Given the loss of his job, and his bleak prospects for comparable

---

[4] Mr. Snapper is 46 years old.  The Sentencing Guidelines acknowledge that younger defendants (defined as those in their early 20s or younger) who have previously received leniency may pose a greater risk of recidivism than older defendants.  *See* U.S. Sentencing Guidelines Manual § 4A1.3 cmt. background (2010).

[5] It is our understanding that this proposal is awaiting approval by the full Commission.

employment going forward, this is a significant blow to the family's fortunes.[6]  Second, he faces a potential fine in the criminal case, where the parties have agreed that the applicable Sentencing Guideline fine range is $3,000 to $30,000.  Third, Mr. Snapper has been named as a defendant in the civil suit filed by Cornwell in the District of Massachusetts, where she is seeking substantial monetary damages for conduct which at least in part relates to the subject matter at issue here.  Fourth, the S.E.C. has opened a formal inquiry into the circumstances relating to the Cornwell contributions.  Finally, Mr. Snapper was recently informed that the Financial Industry Regulatory Authority ("FINRA") has initiated a preliminary inquiry as a consequence of Mr. Snapper's plea and resignation from Anchin, raising the prospect of still more financial and administrative penalties in the future.  Given the nature of the offense, Mr. Snapper has clearly already paid a high price for his transgression.

Third, we submit that the imposition of a prison term would not serve any additional deterrent effect on those who might contemplate committing a similar crime.  The typical offender in this type of regulatory violation would certainly be amply deterred by fear of the financial and reputational punishments already meted out on Mr. Snapper. █████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████

Accordingly, for all of these reasons, a prison term would not serve any legitimate goal of deterrence.

---

[6]     It is our understanding that as a consequence of his conviction, Mr. Snapper will also likely face disbarment in Massachusetts.

5.      Need to Avoid Sentencing Disparities

Under 18 U.S.C. § 3553(a)(6) (2006), courts must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  We respectfully submit that a probationary sentence for Mr. Snapper would ensure that he is treated fairly by comparison to similarly situated defendants.

First, in numerous recent cases, defendants involved in conduit campaign contribution schemes broadly similar to this one (or indeed, in some instances involving more serious conduct) have received probationary sentences.  *See, e.g.*, *United States v. Acevedo-Vila*, 08-cr-00036 (D.P.R. 2008) (Avanzato sentenced to probation and a fine in connection with scheme to reimburse approximately $100,000 of conduit contributions aimed at gaining influence over a gubernatorial candidate); *United States v. Collier*, 1:07-cr-00182 (D.D.C. 2007) (sentencing lobbyist to probation in connection with a scheme to funnel $65,000 in conduit contributions funded by a Native American tribe client seeking to advance its gaming interests); *United States v. Cuza*, 2:05-cr-00344 (C.D. Cal. 2005) (sentencing defendant, a corporate executive in charge of government affairs, to probation in connection with the reimbursement of $102,214 of donations using corporate funds); *United States v. Schwartz*, 1:05-cr-00157 (D.D.C. 2005) (sentencing defendant, a lobbyist and consultant, to probation and fine in connection with Cuza scheme described above); *United States v. Boucher*, 1:06-cr-00062 (D.D.C. 2007) (sentencing defendant, director of government relations for a health care company, to probation and a fine for his role in illegally contributing $50,000 of corporate funds to federal campaigns); *United States v. Feldman*, 09-cr-75 (E.D. Pa. 2009) and 08-cr-36 (D.P.R. 2008) (fining defendant, a prominent Philadelphia political consultant and fundraiser, $6,000 for his role in a scheme to reimburse approximately $100,000 of contributions to the governor of Puerto Rico); *United States v.*

*LeBlanc*, 06-cr-091 (D.D.C. 2007) (probation for defendant, a former chief executive of a private health care company, who pled guilty to a misdemeanor for illegally contributing approximately $50,000 of corporate funds to federal campaigns);  *United States v. Spears*, 1:03-cr-00096 (D.D.C. 2003) (probationary sentence for personal assistant of a former state senator, who pled guilty to obstruction and conspiracy in illegal donations to a congressional campaign); *United States v. Stipe*, 1:03-cr-00128 (D.D.C. 2003) (sentencing defendant who committed perjury and obstruction in connection with investigation of scheme involving approximately $250,000 in conduit contributions to five years' probation).

These cases demonstrate that even those defendants convicted of making conduit contributions as a means of advancing private lobbying interests, funneling prohibited sources of funds, or even involving perjury and obstruction, have routinely received probationary sentences. Mr. Snapper's conduct, by contrast, did not involve any of these aggravating factors.

Second, putting aside the issue of how similarly situated defendants have been treated, it is also worth noting that Mr. Snapper was the only individual to be criminally (or, to date, even civilly) charged for his role in this case.  Mr. Snapper was required to plead to a felony that effectively ended his professional career, while the person who was truly the moving force behind the scheme (Cornwell) has escaped prosecution altogether.  While we do not question that the Government made every effort to bring other charges, the fact remains that Mr. Snapper, who merely facilitated his client's requests, has now been left to bear the full responsibility.

Thus, under all of the circumstances, we respectfully submit it would be grossly unfair to sentence Mr. Snapper to anything more severe than probation.  Accordingly, in the interest of fairness, and to avoid unwarranted sentence disparities among similarly situated defendants, the Court should impose a probationary sentence.

## VI.    CONCLUSION

Mr. Snapper is a man of many qualities.  He has achieved a remarkable degree of personal and professional success through perseverance and a reputation for candor and honesty. From an early age he learned the value of hard work and self-reliance.  He is a devoted husband and father who has always gone the extra mile for friends and family, and members of the extended community where he lives.

Viewed in the context of this life story, we submit that the instant offense reflects an isolated instance of singularly poor judgment.  Mr. Snapper erred in agreeing to facilitate the reimbursements of the contributions at issue.  He understands his conduct was wrong and illegal. But the Court should bear in mind that, unlike many others convicted of similar crimes, he did so not to advance a political agenda, or to throw around his weight, or to curry favor with a politician, but rather to placate a demanding firm client.  That misguided devotion was the only motivation for this crime.

As things now stand, Mr. Snapper has paid, and will continue to pay, a heavy price for his lapse of judgment.  He has already agreed to pay a large fine to the F.E.C.  He has lost his career and his good name.  With a felony on his record, and given the highly regulated nature of his professional field, he is unlikely to ever attain comparable employment.  And he still faces various other civil and administrative proceedings arising out of the same episode.

Courts have seen fit to grant probation in similar circumstances, and this situation should be no different.  Accordingly, we respectfully submit that in light of Mr. Snapper's exemplary background, and all of the circumstances surrounding the offense, this Court should adopt the Government's recommendation and impose a probationary sentence.

Respectfully submitted,

_____
Evan T. Barr (Bar ID: 425971)
Steptoe & Johnson LLP
750 Seventh Avenue, Suite 1900
New York, NY 10019
(212) 506-3918

*Counsel for Defendant Evan Snapper*

Dated:  March 28, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2011, a copy of the foregoing Sentencing Memorandum of Evan Snapper was served on the government by hand-delivery.

_____
Keith Decker